**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**ASHLAND**

| | | |
|---|---|---|
| **LAWRENCE R. STINNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 0:25-CV-00044-DLB-MAS** |
| | ) | |
| **AMANDA PHIPPS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This prisoner civil rights action is before the Court on referral from Chief Judge Bunning [DE 23] for a Report and Recommendation on any dispositive motions, including the parties' motions for summary judgment. Defendants Amanda Phipps, Tonya Ward, Karrington Gullett, and Wellpath, LLC (hereinafter "Wellpath Defendants") initially filed a Motion for Summary Judgment [DE 34]. Plaintiff Lawrence Stinnett ("Stinnett") filed a Response [DE 36], and Wellpath Defendants replied [DE 37]. Stinnett then filed a sur-reply without seeking permission to do so. [DE 38]. In general, a sur-reply may only be filed with leave of the Court. However, given Stinnett's *pro se* status, the Court considers his sur-reply in the following analysis. Thus, this matter is now ripe for review. For the reasons thoroughly discussed below, this Court recommends that the Wellpath Defendants' Motion [DE 34] be granted.

## I. FACTUAL BACKGROUND

Stinnett alleges that the Wellpath Defendants in this action violated his Eighth Amendment and Fourteenth Amendment rights by acting with deliberate indifference to a broken wrist Stinnett suffered during his incarceration. Because the uncontested medical records demonstrate that Defendants provided Stinnett with continual care for his injury, Stinnett cannot establish the necessary elements of a constitutional violation.

Stinnett was initially incarcerated at the Eastern Kentucky Correctional Complex ("EKCC"). On March 5, 2024, Stinnett was struck in the wrist during an altercation with another inmate. [DE 34-2, Page ID# 372]. Stinnett presented to medical staff at EKCC, where Defendant Tonya Ward, RN, screened him for injuries. [*Id.*]. Ward noted that Stinnett presented with bilateral knee abrasions and an abrasion to the left wrist, along with swelling and a palpable radial pulse in the right wrist. [*Id.*]. Ward applied an ace wrap to the right wrist and ordered a routine x-ray of Stinnett's injured wrist. [*Id.*; *Id.* at Page ID# 374].

In his Complaint, Stinnett alleges that he called his father, Dr. Robert Stinnett, about his condition on March 6, 2024. [DE 1, Page ID# 4]. Stinnett further alleges that his father then contacted EKCC Warden, James Green, who contacted Defendant Health Services Administrator Amanda Phipps to inquire as to why Stinnett was not sent to the emergency room for his injury. [*Id.* at Page ID# 5]. This inquiry caused Phipps to personally inform Stinnett that "policy only permits inmates with 'Compound Fractures' or bones pertruding [*sic*] through the skin to be sent to

the E.R." [*Id.*]. Stinnett's attached exhibit supporting this allegation,[1] however, is Phipps's response to a grievance filed by Stinnett, in which she stated:

> After he was injured in an altercation, I did speak to Mr. Stinnett. I am not sure of the date. Mr. Stinnett inquired about why he was not sent to the emergency department, and I advised him that a provider must order for a patient to be sent to the emergency department, either based on their assessment or nursing assessment.
>
> Nursing standing orders indicate to refer to the provider for emergent assessment if the patient experiences: impaired circulation, open fracture, dislocations, shock or hemorrhage, suspected neck, skull, or spinal injury.

[DE 1-1, Page ID# 47].

Stinnett was again treated by a Wellpath medical provider on March 6, 2024. [DE 34-2, Page ID# 383]. The provider noted that Stinnett presented with a possible wrist fracture and was enduring "lots of pain." [*Id.*]. To combat the pain, Stinnett was prescribed a twice daily dose of 600 milligrams of Ibuprofen, set to expire on March 13. [*Id.* at Page ID# 385]. Stinnett was seen again by providers on March 7, 2024, with no complaints noted. [*Id.* at Page ID# 392].

On March 11, 2024, an x-ray of Stinnett's right wrist was performed. [DE 1, Page ID# 11; DE 1-1, Page ID# 47]. Providers completed rounds on March 12 and 14, again receiving no noted complaints from Stinnett. [DE 34-2, Page ID# 397, 408]. On March 15, 2024, Defendant Karrington Gullett, APRN, received the results of the x-ray, which showed a radial/ulnar fracture. [*Id.* at Page ID# 418]. Gullett applied an

---

[1] The text of Stinnett's Complaint indicates that an affidavit would be submitted to support the contention that his father contacted Warden Green; however, no such affidavit exists in the record. [DE 1, Page ID# 5].

ulnar gutter splint to Stinnett's right arm and ordered an orthopedics consult for the next available date, pending approval. [*Id.*; DE 1-1, Page ID# 26].

Stinnett complained of pain and requested Ibuprofen on March 18, 2024. [DE 34-2, Page ID# 433]. His Ibuprofen prescription was renewed with an expiration date of April 16, 2024. [*Id.* at Page ID# 436]. During rounds on March 19 and March 20, no specific complaints were noted. [*Id.* at Page ID# 450, 465].

On March 25, 2024, Stinnett attended an off-campus orthopedics consultation at St. Claire Regional Medical Center. [DE 1-1, Page ID# 38]. Medical staff noted that x-ray imaging demonstrated a distal radius fracture and recommended referral as soon as possible to a hand specialist "for further evaluation and likely surgery." [*Id.* at Page ID# 27]. Further, the treatment plan notes state, "due to the fact the patient is already 14 days out from the injury, recommend this referral as soon as possible; this was communicated to the prison." [*Id.* at Page ID# 29]. Upon Stinnett's return to EKCC, medical providers noted that a splint was applied to his right hand and arm, up to his elbow. [DE 34-2, Page ID# 475]. Stinnett told Wellpath medical providers that his "wrist [was] shattered" and he would "have to go see a specialist at UK to fix it." [*Id.*]. He rated his pain as a nine out of ten and providers noted that Stinnett's vital signs were stable, he was able to move his right fingers, and his skin color was pink with good capillary refill. [*Id.*]. The provider on duty contacted Gullett regarding Stinnett's return and noted that an appointment with a specialist would be scheduled. [*Id.*]. A knock-off order was placed on March 26 due to Stinnett's wrist injury. [*Id.* at Page ID# 485].

On March 27, 2024, Stinnett was seen by Gullett, who recommended him for "referral to hand surgery ASAP for likely surgery." [*Id.* at Page ID# 496]. Gullett noted that he would place an urgent referral to the University of Kentucky Medical Center, and Stinnett did not verbalize any other complaints or concerns. [*Id.*]. According to the EKCC Warden, the hand surgery consultation was scheduled for the first available date, May 14, 2024. [DE 1-1, Page ID# 26].

From April 3 to April 8, Wellpath medical providers conducted near daily rounds with no complaints from Stinnett and Stinnett's temporary cast was replaced upon his request. [DE 34-2, Page ID# 534]. Then, on April 12, 2024, Stinnett told Wellpath medical providers that he was enduring excruciating pain due to an "untreated" "crushed" and "broked wrist" and inquired about the delay to see a hand specialist. [*Id.* at Page ID# 551]. At the outset, the medical provider on duty noted that there was no pending surgical appointment and inquired with the scheduler. [*Id.* at Page ID# 554]. At 10:53 a.m. on April 16, a staff member reviewed the request and noted that surgical intervention was recommended but she did not see a pending appointment. [*Id.*]. The review note was updated at 11:03 a.m. by the same staff member to note that Stinnett did have a pending appointment. [*Id.*]. When Stinnett inquired about the discrepancy, Phipps explained that the note that there was no pending appointment was inaccurate information, which was later corrected by the staff member. [DE 1-1, Page ID# 47].

Stinnett was again seen by Wellpath medical providers on April 18, 2024. [DE 34-2, Page ID# 576]. During the appointment, Stinnett was educated on the word

"untreated" and providers reminded Stinnett that he had a splint, several appointments with Wellpath providers relating to his fracture, and a pending appointment with outside medical providers. [*Id.* at Page ID# 579]. Additionally, Stinnett's prescription for Ibuprofen was renewed. [*Id.* at Page ID# 583].

On April 26, 2024, before his scheduled appointment with the hand specialist, Stinnett was transferred by the Kentucky Department of Corrections to the Little Sandy Correctional Complex ("LSCC"). [*Id.* at Page ID# 602].

On May 14, 2024, Stinnett attended an appointment with hand surgeon Morgan S. Brgoch, MD. [DE 1-1, Page ID# 33]. Dr. Brgoch noted that Stinnett had "a delay in treatment for [his] fracture which makes reconstructive efforts more difficult with potentially more post complications. [*Id.*]. Dr. Brgoch recommended that Stinnett undergo an open reduction and internal fixation (ORIF) of the right distal radius and explained that because "it ha[d] been quite some time since his original injury [the doctors] would likely will [sic] be unable to restore full height to the distal radius which [had] collapsed." [*Id.* at Page ID# 34]. He further noted that Stinnett may need an additional procedure for ulnar shortening in the future and should be scheduled for surgery "as soon as reasonably possible." [*Id.*]. On May 20, 2024, a staff member at LSCC completed a Condensed Consultation Request that summarized the above events and noted that Stinnett would be scheduled for surgery. [*Id.* at Page ID# 31].

On August 12, 2024, Stinnett underwent the recommended surgery. [*Id.* at Page ID# 59]. As an exhibit to his Complaint, Stinnett submitted an evaluation from

a test performed on February 13, 2025, by the Physical Therapy Department at UK's St. Claire Regional Medical Center. [*Id.* at Page ID# 58]. The test results indicated that Stinnett was experiencing moderate ulnar neuropathy at or about the right elbow "affecting both motor and sensory nerve fibers with evidence of ongoing muscle cell membrane instability within the flexor digitorum profundus" and "very mild median neuropathy at the [right] wrist affecting the myelia of the sensory nerve fibers." [*Id.*].

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *See id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322–23.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 477 U.S. at 248. Then, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 258 (citing *First Nat'l Bank v. Cities Servs. Co.*, 391 U.S. 253 (1968)). Consequently, once the burden shifts, the nonmoving party must do more than raise some doubt or produce a "scintilla of evidence" in support of its position, it must produce sufficient evidence to require submission of the issue to the jury. *Anderson*, 477 U.S. at 252; *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990), *aff'd*, 929 F.2d 701, 1991 WL 49687 (6th Cir. 1991). Such evidence must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

The fact that a plaintiff is proceeding *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). Yet, statements in a verified complaint that are based on personal

knowledge may function as the equivalent of affidavit statements for the purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## III. <u>ANALYSIS</u>

Stinnett's action arises under 42 U.S.C. § 1983, which provides a federal remedy against government officials who, while acting under color of state law, "deprive[] the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).

The Eighth Amendment[2] "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs, under § 1983, must establish both the objective and subjective components of such a claim.

The objective component requires demonstrating "the existence of a 'sufficiently serious' medical need." *Blackmore*, 390 F.3d at 895 (quoting *Farmer v.*

[2] Stinnett brings his claim for deliberate indifference under the Eighth and Fourteenth Amendments. Because Stinnett was a convicted prisoner at the time of the alleged conduct, his deliberate indifference claim is properly analyzed under the Eighth Amendment rather than the Fourteenth Amendment. *Bond v. Moore*, 672 F. Supp. 3d 357, 366 (E.D. Ky. 2023) ("[A] convicted prisoner's deliberate indifference claims are analyzed under the Eighth Amendment and a pretrial detainee's under the Fourteenth Amendment Due Process Clause."); *cf. Westmoreland v. Butler County, Kentucky*, 29 F.4th 721, 732–33 (6th Cir. 2022) (Bush, J., dissenting) ("Because Westmoreland is a pretrial detainee, rather than a convicted prisoner, his claim arises under the Fourteenth Amendment rather than the Eighth."). Accordingly, the Court analyzes his deliberate indifference claim under the Eighth Amendment standard set forth herein.

*Brennan*, 511 U.S. 825, 834 (1994)). A sufficiently serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). A serious medical need alone will satisfy the objective element only "if doctors effectively provide[d] no care for it." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) (citing *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)). Alternatively, where, as here, the doctors provided "some care" and the plaintiff claims that the treatment was inadequate, the plaintiff must show more than a serious medical need—that the care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (quoting *Miller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005)); *see also Phillips*, 14 F.4th at 536. Taking another tack, the plaintiff may show that doctors "delayed care" and that the delay had a detrimental effect on the treatment. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.").

On the other hand, the subjective component requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Because deliberate indifference "entails

something more than mere negligence," *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), a plaintiff "must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'" *Rhinehart*, 894 F.3d at 738. Such a "showing requires proof that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). "Only if a prisoner proves th[e] objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021).

Previously, the Sixth Circuit has recognized that a broken wrist constitutes a serious medical need. *See Gray v. Dorning*, 202 F.3d 268 (Table) (6th Cir. 1999); *see also O'Bryan v. Federal Bureau of Prisons*, No. 6:07-CV-76-DCR, 2007 WL 2571906, at *6 (E.D. Ky. Sept. 4, 2007) ("The Court has assumed that a broken wrist is a serious medical need."). But that conclusion does not end the objective inquiry. The undisputed evidence shows that Stinnett received extensive medical care from the Wellpath employees; therefore, the fact that Stinnett suffered a serious medical need alone cannot, by itself, satisfy the objective element. Rather, the objective prong becomes more demanding, and Stinnett must show that the treatment *he did receive* was constitutionally deficient.

Stinnett argues that he has satisfied the objective component of the deliberate indifference standard because his wrist "was <u>OBVIOUSLY</u> broken to the naked eye" and "even a six year old knows that broken limbs or bones require immediate

attention to an E.R." [DE 36, Page ID# 616]. He further states that his qualm is that he was denied a visit to the emergency room at the outset of his injury, which "would most certainly cause further damage to [his] wrist while he continued to suffer excruciating pain in the process." [DE 36, Page ID# 618–19].

Stinnett's injury occurred on March 5, 2024. The medical records submitted by Stinnett and the Wellpath Defendants demonstrate that Stinnett was immediately and consistently treated at EKCC. At the outset, Stinnett presented with a radial pulse and swelling in his right wrist. [DE 34-2, Page ID# 372]. Ward applied an ace wrap to the wrist and ordered an x-ray. [DE 34-2, Page ID# 374]. From that moment on, the Wellpath Defendants provided consistent care, with near daily rounds and specific treatment of Stinnett's wrist injury on multiple occasions. Certainly, Stinnett's claim cannot be categorized as one where there was no treatment at all.

Accordingly, Stinnett must demonstrate that the care he received was grossly inadequate or that the alleged delay in treatment caused a detrimental medical effect. *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021) (citing *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). Generally, deliberate indifference claims proceeding on theories of inadequate or delayed care require plaintiffs to present competent medical evidence from which a reasonable jury could conclude that the delay or inadequacy in treatment caused a detrimental effect. *See Phillips*, 14 F.4th at 535 ("For prisoners to prove grossly inadequate care, moreover, courts generally require them to introduce medical evidence, typically in the form of expert testimony."); *Blackmore v. Kalamazoo*

*County*, 390 F.3d 890, 898 (6th Cir. 2004) (explaining that where the claim concerns the adequacy of treatment rather than a complete denial of care, "medical proof is necessary to assess whether the delay caused a serious medical injury"); *Napier*, 238 F.3d at 742; *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). "For example, if a prisoner's alleged medical need would have been serious absent any treatment, the prisoner could submit medical proof that the provided treatment was not an adequate medical treatment of his condition or pain." *Santiago*, 734 F.3d at 591. Notably, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *King v. Alexander*, 574 F. App'x 603, 605–06 (6th Cir. 2014) (quoting *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)).

As to the issue of medical proof, Stinnett asserts that the medical reports from EKCC Medical Department, LSCC Medical Department, St. Claire Regional Medical Center, and the University of Kentucky hospital satisfy this requirement. [DE 36, Page ID# 618]. Specifically, Stinnett points to the St. Claire's assessment referring him to a "hand specialist" and stating that "due to the fact that patient is already 14 days out from the injury, recommend this referral as soon as possible; this was communicated to the prison[;]" the Condensed Consultation Request from the LSCC Provider summarizing Stinnett's patient history;[3] and the notes by Dr. Brgoch

[3] Upon evaluating the full record, it is this Court's opinion that the Condensed Consultation Request is merely a summary of Stinnett's patient history, rather than an independent medical opinion.

detailing the difficulties resulting from the delay in treatment. [DE 36, Page ID# 619–21]. Although not referenced in his summary judgment filings, it is worth noting that Stinnett presented an evaluation by a physical therapist establishing that Stinnett experienced some neuropathy in his right wrist and elbow. [DE 1-1, Page ID# 58–59]. With these opinions, Stinnett argues that deliberate indifference is unequivocally established because his medical providers opine that the delay in treatment "rose to the requisite level of 'seriousness' required." [DE 36, Page ID# 621].

Even assuming Stinnett's medical records constitute sufficient medical evidence to establish that a delay in treatment adversely affected his wrist, they do not establish the necessary causal connection between that detrimental effect and conduct attributable to the Wellpath Defendants. The record reflects several periods of delay, including the time between Stinnett's injury and the x-ray, the time between the identification of the fracture and his evaluation by an orthopedic specialist, the time between that evaluation and his hand-surgery consultation, and the subsequent period preceding surgery. Stinnett's medical evidence establishes, at most, that treatment was delayed and that the delay made reconstructive treatment more difficult with neuropathy as a possible result. It does not identify which delay caused that detrimental effect or establish that the delay was caused by any of the Wellpath Defendants.

Indeed, by the time Dr. Brgoch evaluated Stinnett on May 14, 2024, Stinnett had been transferred from EKCC, and the record does not identify evidence that the

Wellpath Defendants controlled the scheduling of his subsequent surgery. To that point, Dr. Brgoch does not identify which portion of the roughly ten-week interval between injury and consultation caused the detrimental effect, nor does he distinguish between the approximate six days between Stinnett's injury and the x-ray, the four days between the x-ray and Gullett's review of the results, and the substantially longer periods Stinnett subsequently waited for outside orthopedic and hand specialist appointments—delays that were a function of external scheduling, and not attributable to any act or omission by the Wellpath Defendants. Nor does the record support any contention that Gullett did not actually schedule an appointment with the hand specialist within a reasonable time.[4] Although Gullett's March 27 referral was marked urgent, the undisputed evidence submitted by Stinnett reflects that the resulting May 14 appointment was the first available date offered by the outside specialist, and Stinnett identifies no evidence or argument that any delay in transmitting, prioritizing, or following up on that referral is attributable to the Wellpath Defendants rather than the scheduling constraints of the outside provider.

Similarly, the February 13, 2025, physical therapy evaluation documents neuropathy, but says nothing about causation or timing. Nor does it purport to connect the neuropathy findings to any gap in Stinnett's treatment. Absent expert medical opinions or evidence connecting the detrimental effect identified by Dr.

[4] The corrected note from April 16, 2024, [DE 34-2, Page ID# 554], is consistent with a documentation error rather than a misrepresentation, and Defendant Phipps explained to Stinnett that the initial note reflected inaccurate information that was promptly corrected. [DE 1-1, Page ID# 47]. There is no evidence to support a theory that no appointment existed until some later point.

Brgoch and the physical therapist's test to a particular act or omission by one of the Wellpath Defendants, Stinnett cannot carry his burden on causation. *See King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014) (affirming summary judgment where the plaintiff did not "establish a causal link between [the] injury and the allegedly inadequate treatment"); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

Stinnett repeatedly avers that his claim comes down to one main thing: he should have been immediately transported to an emergency room and x-rayed, and it was this delay that caused a detrimental effect. [DE 36, Page ID# 618; DE 38, Page ID# 652, 651]. And, even if an immediate transport to the emergency room was unwarranted, he contends that he should have been transported to the emergency room once the x-ray conclusively established that his wrist was, in fact, fractured. [DE 38, Page ID# 652]. Neither contention alters the conclusion. Although an x-ray was not performed until March 11, Stinnett has not identified medical evidence establishing that an x-ray or emergency department evaluation on March 5 would have prevented the subsequent deterioration of his fracture or otherwise altered his treatment outcome. Likewise, none of the medical opinions he identifies opine that an emergency-department evaluation or additional treatment immediately after the reading of the March 11 x-ray, instead of the medical attention provided by Gullett, would have triggered a different treatment plan or prevented the detrimental effect Stinnett ultimately experienced. Although Stinnett disagrees with the decision not to send him immediately to an emergency department, the record reflects that medical staff evaluated him on the date of injury, immobilized the wrist, and ordered

an x-ray. The record contains no medical evidence that the decision to pursue a routine rather than emergent x-ray caused the subsequent deterioration of the fracture. Nor does it establish that an earlier review of the x-ray results would have produced a different treatment outcome.

Further, the decision whether to order an x-ray is a medical judgment that courts routinely decline to second-guess. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (whether to order additional diagnostic techniques "is a classic example of a matter for medical judgment" and "does not represent cruel and unusual punishment"); *O'Bryan v. Federal Bureau of Prisons*, No. 6:07-CV-76-DCR, 2007 WL 2571906, at *10 (E.D. Ky. Sept. 4, 2007) (declining to second-guess the timing of diagnostic imaging). That the x-ray ultimately revealed a fracture does not transform what was, at the time, a reasonable triage decision into deliberate indifference. *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[W]hen a prison doctor provides treatment, albeit carelessly or inadequately, the treatment provided generally does not constitute the basis for an Eighth Amendment violation."). In any event, Stinnett fails to sufficiently establish the causal link between the acts and omissions of the Wellpath Defendants and the detrimental health he experienced. *See King*, 574 F. App'x at 606.

Stinnett also contends that Defendant Phipps personally told him that EKCC policy permitted inmates to be sent to the emergency department only when they had a compound fracture or bone protruding through the skin. [DE 1, Page ID# 5]. The record contains documentation that Phipps advised Stinnett that nursing standing

orders required referral to a provider for emergent assessment in circumstances including impaired circulation, open fractures or dislocations, shock or hemorrhage, or suspected neck, skull, or spinal injury. [DE 1-1, Page ID# 47]. Even accepting Stinnett's allegation that Phipps personally told him that inmates could be sent to the emergency department only for compound fractures or bones protruding through the skin, the record does not establish that this decision caused the detrimental effect identified by Stinnett. Stinnett was evaluated on the date of his injury, his wrist was immobilized, an x-ray was ordered, and he received continuing medical care thereafter. None of the medical evidence he identifies establishes that a hospital evaluation or x-ray on March 5 would have prevented the subsequent deterioration of his fracture.

Additionally, Stinnett claims that despite his "severe and excruciating pain due to his broken wrist, he wasn't prescribed any pain medication until well after 03-18-24, and then, was only prescribed Ibuprofen," which he argues also constitutes deliberate indifference. [DE 36, Page ID# 617–18; DE 38, Page ID# 648–49]. However, Stinnett's restatement of the facts is not supported by the record. The record evidence demonstrates that Stinnett was prescribed twice-daily doses of Ibuprofen on March 6, March 18, and April 18, including each time he requested it. [DE 34-2, Page ID# 383, 436, 576]. Even so, the Sixth Circuit has stated that a complaint that a medical provider or prison officials did not provide "specific medications, treatment, or dosages" is not sufficient to "state a constitutional claim of deliberate indifference as to serious medical needs." *Mabry v. Antonini*, 289 F.

App'x 895, 902 (6th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, Stinnett's claim that he was not prescribed pain medication is insufficient to support a cognizable constitutional claim.

For these reasons, Stinnett has not satisfied the objective component of his claim. Because Stinnett cannot establish the objective element, the Court need not reach the subjective component. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). Nevertheless, even if Stinnett could establish a sufficiently serious medical need, his claim would independently fail on the subjective component.

The undisputed evidence reflects that Ward evaluated Stinnett immediately after the injury, ordered diagnostic imaging, and provided immobilization; Gullett reviewed the x-ray imaging once available, applied a splint, sought an orthopedic appointment, and, later, hand-specialist care. Even accepting the allegation that Phipps told Stinnett EKCC policy permitted emergency department referral only for compound fractures or bones protruding through the skin, Stinnett identifies no evidence that any defendant subjectively recognized a substantial risk of serious harm and nevertheless disregarded that risk. Instead, the medical records demonstrate that Defendants responded to Stinnett's medical needs reasonably. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk . . ."). At most, the evidence suggests a disagreement concerning the timing and adequacy of the care provided, which does not establish deliberate indifference.

In short, Stinnett received continuing medical care for his injury, but he has not produced evidence from which a reasonable jury could conclude that any Wellpath Defendant provided constitutionally inadequate care, caused a detrimental delay, or acted with deliberate indifference to a substantial risk of serious harm. Thus, the evidence in support of Stinnett's claim is simply inadequate to create a genuine dispute of material fact under § 1983. Perhaps Stinnett has a state common law claim for medical negligence, but he does not have a § 1983 claim for deliberate indifference.

Stinnett also brought an Eighth Amendment claim against Wellpath. To hold Wellpath liable, Stinnett needed to establish that one of its customs or policies caused the underlying Eighth Amendment violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Without any evidence of an underlying constitutional violation, however, Stinnett's claim against Wellpath must fail too.[5] *See Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017).

Finally, Stinnett seems to argue that because the Wellpath Defendants' Motion to Dismiss [DE 31] contained "matters outside of the pleadings" it should have been treated as a motion for summary judgment, which would foreclose the filing of the instant motion—by Stinnett's characterization, a second motion for summary judgment. [DE 36, Page ID# 623; DE 38, Page ID# 654]. Although, as Stinnett argues, this Court recognized that a motion for summary judgment would have been

[5] The Court recognizes that Stinnett submitted the contract between the Department of Corrections and Wellpath in support of arguments on this point; however, because the *Monell* claims must fail, the Court need not address Stinnett's arguments regarding contractual obligations.

a more appropriate vehicle for relief than the Motion to Dismiss filed by the Wellpath Defendants [DE 32], the characterization of the motion does not preclude the instant motion. The Court dismissed the Motion to Dismiss without prejudice, meaning the Wellpath Defendants could refile it as a motion to dismiss, or motion for summary judgment, at any time. [DE 32; DE 35]. Regardless, district courts "may in their discretion permit renewed or successive motions for summary judgment." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000) (Gilman, J., concurring in part). Therefore, it is squarely within this Court's discretion to entertain a second motion for summary judgment, as it does here.

## IV. CONCLUSION

For the reasons discussed in this opinion, the Court **RECOMMENDS** that the District Court **GRANT** the Wellpath Defendants' Motion for Summary Judgment [DE 34].

The undersigned enters this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and FED. R. CIV. P. 72(b). Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, either party may submit written objections for *de novo* determination by the District Judge.

Signed this the 10th of August, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY